AO 442 (Rev. 10/03) Warrant for Arrest

# UNITED STATES DISTRICT COURT

District of _____ VERMONT _____

UNITED STATES OF AMERICA

V.

MARCOS ALVARADO

**WARRANT FOR ARREST**

Case Number: 2:05-CR-44-1

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest   Marcos Alvarado
                                                                                    Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☒ Indictment  ☐ Information  ☐ Complaint  ☐ Order of court  ☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice

charging him or her with (brief description of offense)
making a false statement to a Grand Jury

**COPY FOR CASE FILE AND/OR INVESTIGATIVE PURPOSES ONLY**
**ORIGINAL ON FILE USMS VT**

in violation of Title __18__ United States Code, Section _____

| Lisa Wright | *Lisa Wright* (signature) |
|---|---|
| Name of Issuing Officer | Signature of Issuing Officer |
| Deputy Clerk | 3/30/2005     Burlington, VT |
| Title of Issuing Officer | Date     Location |

U.S. MARSHALS SERVICE
DISTRICT OF VERMONT
2005 MAR 30 P 4: 53

**RETURN**

This warrant was received and executed with the arrest of the above-named defendant at

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. |
| | ) | |
| | ) | |
| MARCOS ALVARADO, | ) | |
| Defendant | | |

## INDICTMENT

### Introduction

1. At all times material to the indictment herein, the federal grand jury sitting in Rutland, Vermont, was investigating the exchange of guns for illegal narcotics and the proceeds of sales of illegal narcotics. The guns were obtained in the District of Vermont and exchanged for illegal narcotics and the proceeds of sales of illegal narcotics both of which came from the District of Massachusetts.

2. At all times material to the indictment herein, the involvement of MARIEL MARRERO, a.k.a. "Bella," in these transactions was central to the grand jury's investigation.

3. On December 3, 2003, law enforcement agents executed a search warrant on the residence of MARIEL MARRERO, which was located at 316 Page Boulevard, 1st floor, Springfield, Vermont.

4. On December 4, 2003, law enforcement agents returned to 316 Page Boulevard, 1st floor, Springfield, Vermont, to interview MARCOS ALVARADO, the

roommate of MARIEL MARRERO.

5. **MARCOS ALVARADO** went to the Springfield (Massachusetts) Police Department and there he told the law enforcement officers the following:

a) That he knew a person named "Boo," who was from Vermont, had been selling guns to MARRERO;

b) That he had been present when "Boo" and a person he described as a "fat kid" brought a gun he described as a "Mac 10" to MARRERO and sold it to her;

c) That MARRERO herself had told him about "Boo" and guns; and

d) That he had seen photographs of MARRERO and other individuals posing with guns.

6. On December 4, 2003, while at the Springfield (Massachusetts) Police Department **MARCOS ALVARADO** also identified the person he called "Boo" from a Vermont Driver's License picture of Marlon Taliaferro. He identified the "fat kid" from a Vermont Driver's License picture of Jay Lindsey.

7. On January 12, 2005, **MARCOS ALVARADO** came to testify, pursuant to a grand jury subpooena, before the federal grand jury sitting in Rutland, Vermont.

8. At all times material to the indictment herein, MARIEL MARRERO's involvement with firearms, specifically firearms obtained in Vermont and traded or sold to her, was material to the grand jury's inquiry.

9. It was the defendant's testimony that he had never made the statements alleged

2

herein to the law enforcement agents. Specifically, **MARCOS ALVARADO** denied ever saying: 1) that he knew a person named "Boo;" 2) that he had been present when the "fat kid" and "Boo" gave a Mac-10 to MARRERO; and 3) that he had seen photographs of MARRERO posing with firearms. He further denied that he had identified "Boo" and the "fat kid" from photographs shown to him by law enforcement officers.

### a. Testimony regarding Marlon "Boo" Taliaferro

i. In his grand jury testimony, **MARCOS ALVARADO** denied the statements he had given on December 4, 2003, with respect to "Boo":

> Q: Do you know, or have you ever met, a person named Boo?
>
> A: No.
>
> Q: Do you know a person named Marlon Taliaferro?
>
> A: No.
>
> Q: So, one of the statements in this particular document says that you knew Boo from Vermont was selling guns to Mariella Marrero and that Boo bought ammunition for Marrero. Let me ask you two questions again. Did you make that statement to ATF?
>
> A: No.
>
> Q: So you never told them that you knew Boo from Vermont?
>
> A: No.
>
> Q: And that Boo was selling guns to Ms. Marrero?
>
> A: No.

3

> Q: ... Do you know in any kind of way, whether you heard about it talked in conversation, have you ever heard of a person named Boo selling guns to Ms. Marrero?

MARCOS ALVARADO responded that he had learned all of this from the ATF agents, but had not made the statements himself.

> Q: ...Let me go back over one more time just generally, your statement is that you do not know a person who you have heard called Boo; is that right?
>
> A: Yes.
>
> Q: You never told ATF that you knew a person named Boo?
>
> A: Yes.
>
> Q: And that means, yes, I did not tell them that?
>
> A: Yes, I did not tell them that.

Later on in his testimony, MARCOS ALVARADO again denied making his statements to the ATF agents.

> Q: Okay. You did not know – you did not tell ATF that you knew this person, Boo, was bringing guns from Vermont?
>
> A: I did not tell them that.
>
> Q: And you have no knowledge, either from hearing it on the street or anything else, about Boo bringing guns from Vermont to Springfield?
>
> A: I have no knowledge about it, no.

MARCOS ALVARADO further recalled being shown a driver's license but responded in the negative when asked if he had identified one of the photographs as "Boo."

4

### b. Testimony regarding Jay "the Fat Kid" Lindsey

i. In his grand jury testimony, **MARCOS ALVARADO** denied the statements he had given on December 4, 2003, with respect to "the fat kid":

> Q: Did you tell ATF that you were present at Ms. Marrero's mother's house on Grenich [sic] Street when a person name Boo and a fat kid brought a firearm into the house in a black bag?
>
> A: No.
>
> Q: You did not tell ATF that?
>
> A: No.
>
> Q: So if ATF's report reflected that you told them that, that would be untrue?
>
> A: Untrue, yeah.
>
> . . .
>
> Q: Did you tell ATF that you thought that the fat kid was the owner of the gun and that he thought the deal – and that you thought the deal was for $2,000?
>
> A: No.
>
> Q: So, your testimony is that if that's reflected in the ATF report, that's incorrect?
>
> A: That's incorrect.

ii. **MARCOS ALVARADO** denied that he had identified the "fat kid" from a photograph shown to him by law enforcement officers. He further stated that he knew nothing about a "fat kid" bringing guns to MARIEL MARRERO:

5

Q: And you have no knowledge of a fat kid bringing a Mack 10 to Mariella Marrero's mother's house?

A: No.

Q: You've never heard anything about that, that's never been anything you've heard out on the street?

A: No.

Q: You have heard —

A: It was mentioned by the ATF.

Q: Okay. When I say that you haven't heard anything about this out on the street —

A: That means anybody besides them?

Q: Yes. Yeah. Have you heard anything about guns being brought from Vermont to Springfield?

A: No.

Q: You know nothing about this?

A: No.

**c. Testimony regarding the photographs of the guns:**

i. In his grand jury testimony, **MARCOS ALVARADO** denied the statements he had given on December 4, 2003, with respect to seeing photographs of MARIEL MARRERO posing with friends and guns:

6

> Q: Did you tell the police officers that you had seen photographs of Ms. Marrero posing with other individuals and guns?
>
> A: Individuals, not guns.
>
> Q: You never told the police officers that you saw Ms. Marrero posing in photographs with guns?
>
> A: Not with guns. I said I've seen her posing with other individuals.
>
> Q: Okay.
>
> A: But I never mentioned anything about guns.
>
> Q: . . . Have you in fact ever seen photographs of Ms. Marrero with guns?
>
> A: No.
>
> Q: Posing with other people?
>
> A: No.

MARCOS ALVARADO then claimed that he had learned about these photographs because "the ATF officers told me that they did have pictures of her and they asked me if I had seen any pictures of her with a gun in her hands or with friends with guns in their hands. And I had said no."

    ii. MARCOS ALVARADO was later asked again about MARRERO and photographs of her posing with guns:

> Q: You were not aware that there were photographs of Ms. Marrero posing with guns with other people, is that right?
>
> A: Yes, I wasn't aware of that.
>
> Q: And you, in fact, never saw those photographs, you never saw them?

7

A: Not with the guns, no.

10. In truth and in fact, **MARCOS ALVARADO** did make the statements to law enforcement officers that he later denied making while testifying in the grand jury.

8

## Count One

The Grand Jury charges:

The introduction to this indictment is incorporated herein by reference.

On or about January 12, 2005, within the District of Vermont,

**MARCOS ALVARADO**

the defendant, being under oath in a proceeding before a grand jury of the United States did knowingly make a false material declaration, that is that he denied telling law enforcement officers that he knew that a person named "Boo" brought firearms from Vermont to MARIEL MARRERO.

(18 U.S.C. § 1623)

9

## Count Two

The Grand Jury further charges:

The introduction to this indictment is incorporated herein by reference.

On or about January 12, 2005, within the District of Vermont,

## MARCOS ALVARADO

the defendant, being under oath in a proceeding before a grand jury of the United States did knowingly make a false material declaration, that is that he denied telling law enforcement officers that he knew a person he described as the "fat kid" had brought a firearm to MARIEL MARRERO.

(18 U.S.C. § 1623)

10

## Count Three

The Grand Jury further charges:

—. The introduction to this indictment is incorporated herein by reference.

On or about January 12, 2005, within the District of Vermont,

### MARCOS ALVARADO

the defendant, being under oath in a proceeding before a grand jury of the United States did knowingly make a false material declaration, that is that he denied telling law enforcement officers that he had seen photographs of MARIEL MARRERO posing with firearms.

(18 U.S.C. § 1623)

A TRUE BILL

_____
FOREPERSON

_____
DAVID V. KIRBY
United States Attorney

Rutland, Vermont
March 30th, 2005

11